69 N.J. Super. 283 (1961)
174 A.2d 209
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JUAN JOSE GONZALEZ, OR JUAN JOSE GONZALES, DEFENDANT, AND PEERLESS INSURANCE COMPANY, A NEW HAMPSHIRE CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1961.
Decided October 13, 1961.
*284 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Sylvan G. Rothenberg argued the cause for appellant (Mr. Robert Goodman, attorney).
Mr. Archibald Kreiger, Legal Assistant to Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from a judgment against the defendants on a recognizance of bail, in which one Jose Gonzalez was principal and Peerless Insurance Company was surety. Only Peerless appeals.
On July 8, 1959 Gonzalez was taken into custody on a concealed weapon charge (N.J.S. 2A:151-41), and bail in the amount of $2,500 was set by the Municipal Court of Paterson. Gonzalez, as principal, and Peerless, as surety, executed a recognizance of bail, and defendant was released on July 11, 1959. Inadvertently, approval of the bailpiece was not endorsed thereon. This irregularity was discovered *285 on November 6, 1959 when defendant was arraigned before the Passaic County Court. Thereupon, the County Court judge remanded defendant to custody pending rectification of the formal defect in the bailpiece. The recognizance was approved and endorsed by the magistrate, and on November 10, 1959 defendant was again released. When the case was called for trial on March 8, 1960 Gonzalez did not appear and the bail was declared forfeited. Thereafter, the court granted the State's motion for judgment made pursuant to R.R. 3:9-7. Hence this appeal.
It appears from the judgment that the defense to the action below was based entirely on the claim that the failure of the magistrate to endorse his approval of the instrument nullified appellant's obligation thereon. The County Court held:
"* * * that the recognizance was proper and legal as a voluntary bond despite omission of approval by the Magistrate, and that it was not materially changed or altered, and that under all the circumstances the said recognizance was in full force and effect, valid and legal; * * *"
This appeal originally came on for oral argument on June 19 of this year. Appellant, in its brief, at that time stated that the only question involved on appeal was:
"Did the defective bail piece constitute a discharge of the bail?"
For reasons which are inapposite to the proceeding in its present stage, we concluded that the appellant's brief, in form and substance, was inadequate to enable us to intelligently determine the issue presented. We ordered the briefs suppressed and directed that a proper brief be filed, granting leave to the State to answer it.
In the brief which has since been filed by the appellant it is stated that the sole question involved is:
"Did the incarceration of the principal upon discovery of the omission of approval by the Magistrate operate as a surrender of the principal and therefore a discharge of the surety?"
*286 This obviously represents a complete shifting of position from that taken before the County Court in resistance of plaintiff's motion for judgment. Moreover, it reveals a substantial infraction of the rule which requires that "if the questions involved include any not presented to the court below, this fact shall be noted. The foregoing requirements are to be considered in the highest degree mandatory, admitting of no exception; * * *" R.R. 1:7-1(c).
However, since neither of the questions, as stated, has been previously considered by our courts, both will be determined herein.

I.
N.J.S. 2A:8-27 provides for holding to bail, and the officials authorized to do so are set forth as follows:
"Any judge of a county court, county district court or criminal judicial district court, or any clerk or deputy clerk thereof may, within the county wherein an offender may be apprehended, or any magistrate of a municipal court, any clerk or deputy clerk thereof, any officer authorized by section 2A:8-28 of this Title to take bail, the chief of police or other person acting in that capacity in any municipality and the police officer in responsible charge of the police station may, within the municipality wherein an offender may be apprehended, administer or take any oath, acknowledgment, complaint or affidavit to be used in the proceeding, issue warrants and summonses, endorse warrants from other counties, and upon arrest hold the accused to bail, the offense with which he is charged being bailable, for his appearance before the Superior Court, the County Court, the county district court, any criminal judicial district court or any municipal court, in the county at such time as he may direct."
The statute is implemented by the revised rules. R.R. 8:9-1 provides:
"All persons, except those charged with treason, murder, kidnapping, manslaughter, sodomy, rape, arson, burglary, robbery or forgery, shall before conviction be bailable by sufficient sureties by a magistrate; * * *"
*287 R.R. 8:9-2 provides
"(a) In the absence of the magistrate, a person arrested and charged with a criminal offense which is not an indictable offense and which may be tried by the magistrate, may, before his appearance before the magistrate, be admitted to bail by the clerk of the court; and in the absence of the magistrate and the clerk, may be admitted to bail by any other person authorized by law to admit persons to bail other than the arresting officer, designated for such purpose by the magistrate.
(b) In any case in which the magistrate may admit to bail, the magistrate may designate the taking of the recognizance by the clerk or any other person authorized by law to take recognizance other than the arresting officer, in the amount fixed by the magistrate."
A reading of the cited statute and rules, therefore, reveals that appellant's thesis that approval and endorsement by the magistrate personally is requisite, is without foundation.
Such approval by the magistrate or any other authorized person is merely evidence of the fact that the person was admitted to bail in an amount, and with security, satisfactory to the officer granting his release. While it may be implied that official approval should be signified by endorsement, such requirement is at most directory, having as its purpose the protection of the State from the unwarranted release of a person on insufficient bail and the fixing of responsibility in an official who might approve the same. Thus viewed, the absence of stated approval cannot vitiate the obligations of the principal and surety who unconditionally bound themselves by their signatures before the recognizance was submitted for approval. See 8 C.J.S., Bail, § 17, p. 20.
Moreover, in another context it was said in Emanuel v. McNeil, 87 N.J.L. 499, 504 (E. & A. 1915):
"But where it [the bond] is voluntarily entered into, and the principal enjoys the benefits which it is intended to secure, and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defence."
*288 We find this principle fully applicable here. Consequently, even if the surety might have been exonerated by a technical deficiency in the bail  and we hold it was not  the acceptance and retention of custody of the principal by the surety in accordance with the recognizance, precluded the surety from attacking the validity of the instrument after breach.

II.
The general rule is that where, after giving bail, the prisoner is re-arrested on the same charge or for the same offense, the sureties are discharged, since the only consideration of the undertaking accruing to the sureties is the custody of the principal. Hence, when this consideration fails their liability ceases. 8 C.J.S., Bail, § 77, p. 150. See also 6 Am. Jur., Bail and Recognizance, § 183, p. 137. Accordingly, when the bail is released by the re-arrest, nothing short of a new obligation will bind the sureties and, although the principal is subsequently released, the liability of the sureties is not revived.
These principles find just application in cases such as those relied upon by appellant. Commonwealth v. Skaggs, 152 Ky. 268, 153 S.W. 422, 44 L.R.A., N.S., 1064 (Ct. App. 1913); Medlin v. Commonwealth, 11 Bush. 605, 74 Ky. 605, (Ct. App. 1876); Commonwealth v. Overby, 80 Ky. 208, 44 Am. Rep. 471 (Ct. App. 1882). In each of these cases the principal escaped from the custody of the State after he had been re-arrested. The exoneration of the surety in such circumstances sounds in the prejudice it suffers by reason of the deprivation of custody, and the resultant loss of its continuing right to surrender the principal to the custody of the court at any time, and thus obtain exoneration. And it is logical to conclude that even if the escapee be apprehended and restored to the custody of the surety, this should not revive the surety's obligation, in view *289 of the increased risk demonstrated by the escape. See 8 C.J.S., Bail, § 77, p. 150, supra.
But these salutary rules are inapplicable where, as here, the State has taken only temporary custody expiring before the appearance date. The rationale of the distinction between the two situations is that in the latter situation the surety (absent special circumstances which are not present here) suffers no demonstrable prejudice by the temporary detention. In the case before us there is no evidence whatever that Peerless was prejudiced by the detention of Gonzalez from November 6 to November 10, 1959, and on oral argument the court asked counsel for appellant what prejudice he contended was suffered by reason of Gonzalez's detention. The reply was that "perhaps" the risk of Gonzalez's flight from the jurisdiction was enhanced by his contact with State custody. This we find to be tenuous and conjectural.
But, in any event, Peerless was free to surrender Gonzalez at the time of the arraignment when he was remanded to jail, or during his detention, or at any time after his release therefrom. It did not do so, but instead chose to retain the premium it had charged in exchange for its guarantee to produce the principal at the trial, and thereafter, if need be. It made no effort to terminate its obligation by surrendering Gonzalez until it was prevented from doing so by his flight. This was too late. Compare People v. McReynolds, 102 Cal. 308, 36 P. 590 (Sup. Ct. 1894).
Affirmed.